**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | **NO. 15-CR-20545-JAL** |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **GUSTAVO J. GIRAL,** | § | |
| | § | |
| Defendant. | § | |

## STATEMENT OF THE OFFENSES

The United States Attorney, in and for the Southern District of Florida, and the

Department of Justice, Criminal Division, Fraud Section ("the Government"), and the Defendant

represent and agree that if this matter were to proceed to trial the Government would be able to

prove the following beyond a reasonable doubt:

1.         Factoring was a type of accounts receivable financing in which a merchant

sold the right to collect on its accounts receivable to a private lender, for a

discounted price, in return for immediate cash.   Private lenders who specialized

in this type of financing were called factors.  Factoring provided immediate

money allowing the borrowing business to pay bills or to purchase additional

merchandise. guarantee.

2.         The Export Import Bank ("Ex-Im Bank"), located in Washington, D.C., is an

executive branch agency of the United States and is responsible for promoting the

export of United States goods to foreign companies.  Ex-Im Bank issues loan

guarantees to domestic banks for loans provided to foreign buyers purchasing goods manufactured in the United States.

3.      Prior to issuing a loan guarantee, Ex-Im Bank requires the lending bank to document the transaction by completing an Application for Medium-Term Insurance ("Ex-Im Application"), which details the loan amount, down payment, the goods being purchased and shipped, and their country of origin.

4.      The Ex-Im Application includes information memorializing the commercial transaction that is provided by participants in the loan transactions which included the identity of borrowers, lenders, brokers, suppliers and exporters.

5.      Ex-Im Bank requires that the exporter certify to the lending bank, in the form of an Ex-Im Bank Exporter's Certificate, that United States goods have actually been purchased and shipped to the borrowers before Ex-Im Bank will issue a loan guarantee.

6.      At all times relevant to the crimes charged in the Indictment, **GUSTAVO J. GIRAL ("GIRAL")** was a United States citizen, resided in Miami, FL, and owned both Global Export Machinery, Inc. ("GEM"), an export company located in Miami, FL, and Zaragoza Exports, an export company located in Miami, FL. **GIRAL** was married to defendant Isabel C. Sanchez.

7.      At all times relevant to the crimes charged in the Indictment, the defendant Isabel C. Sanchez ("Isabel Sanchez"), was a United States citizen residing in Miami, FL.  Isabel Sanchez owned Ex-Im of America, Inc. ("EOA"), an export

company located in Miami, FL.  EOA was a private company and not related in any way to Ex-Im Bank.  EOA factored fictitious sales invoices to two Miami area Factors.  Isabel Sanchez was married to defendant **GIRAL** and was the daughter of defendant Guillermo A. Sanchez-Badia.

8.                          Guillermo A. Sanchez-Badia (Guillermo Sanchez"), a United States citizen, resided in Miami, FL, and owned both ACE Products, Inc. ("ACE"), an export company located in Cutler Bay, FL, and Timber Depot ("Timber Depot"), a lumber export company located in Miami, FL, and Dorado, Puerto Rico.  Timber Depot factored fictitious sales invoices to two Miami area Factors.  Guillermo Sanchez was the father of Isabel Sanchez.

9.                 At all times relevant to the crimes charged in the Indictment, Fredy Moreno-Beltran ("Moreno"), a Colombian national, resided in Colombia, South America, and owned Clientric S.A. ("CSA"), a telephone call center business located in Colombia.  Moreno and CSA acted as a "buyer" in both the factoring fraud and the Ex-Im Bank fraud.

10.                 At all times relevant to the crimes charged in the Indictment, Jorge R. Amad ("Amad"), was a United States citizen  resided in Miami, FL, and was the co-owner of a telecommunications software company known as Approach Technologies International ("ATI").

11.                 At all times relevant to the crimes charged in the Indictment, Ricardo J. Beato ("Beato") was a U.S. Citizen residing in Miami, Florida and was the co-owner of ATI.

12.         **GIRAL**, Isabel Sanchez and Guillermo Sanchez caused companies they owned and controlled to enter into factoring loan agreements with the Factors, pursuant to which the Factors purchased purported receivables.  **GIRAL** followed the instructions of Isabel Sanchez and Guillermo Sanchez in carrying out the criminal activity.

13.         From February 2007, through December 2012, in Miami-Dade County, in the Southern District of Florida, and elsewhere, **GIRAL**, Isabel Sanchez, Guillermo Sanchez and others defrauded the Factors and Ex-Im Bank by making materially false statements about the purchase of lumber, machinery and telemarketing equipment in order to obtain financing including through an Ex-Im Bank guaranteed loan.

14.         **GIRAL**, Isabel Sanchez and Guillermo Sanchez caused companies they owned and controlled to enter into factoring loan agreements with the Factors, pursuant to which the Factors purchased purported receivables.

15.         **GIRAL**, Isabel Sanchez, Guillermo Sanchez, and others created and caused to be created false and fraudulent documents to the Factors and Ex-Im Bank, including false purchase orders, invoices and shipping documents purporting to show that merchandise had been purchased by, and shipped to, foreign and domestic purchasers possessing satisfactory commercial credit, when in fact no such purchases or shipments occurred.

16.         **GIRAL**, Isabel Sanchez, Guillermo Sanchez, and others caused the transfer

of fraud proceeds, via bank wire transfer, to accounts in the names of over ten (10) companies they owned and controlled in order to disguise that the funds were provided by the Factors and the Ex-Im guaranteed loan provider.

17.     **GIRAL**, Isabel Sanchez, Guillermo Sanchez, and others created additional false and fraudulent invoices that were factored which purported to show new sales and purchases, and used a portion of the fraudulent proceeds to pay off prior factored invoices in a Ponzi-like scheme.

18.     At a time when the Factors refused to extend additional financing due to payment delinquencies, **GIRAL**, Isabel Sanchez, Guillermo Sanchez, Moreno, Amad, and Beato obtained a fraudulent Ex-Im Bank guaranteed loan to further fund the scheme.

19.     **GIRAL**, Isabel Sanchez, Guillermo Sanchez, Moreno, Amad, and Beato submitted false and fraudulent documents to Ex-Im Bank through a Lender, falsely representing that United States goods had been purchased by and shipped to a foreign buyer.

20.     **GIRAL**, Isabel Sanchez, and Guillermo Sanchez, used a portion of the Ex-Im Bank guaranteed loan proceeds to pay off, earlier factored invoices.

21.     On or about July 23, 2010, **GIRAL**, Isabel Sanchez and Guillermo Sanchez caused a $300,000 bank wire transfer funded through factoring proceeds from ACE's Bank Account, in Miami, Florida to a bank account they controlled in, Puerto Rico in furtherance of the Ponzi-like scheme.

22.　　　　　**GIRAL**, Isabel Sanchez and Guillermo Sanchez caused the Factors to incur a combined loss of approximately $9,551,425.

23.　　　　　**GIRAL**, Isabel Sanchez, Guillermo Sanchez, Moreno, Amad, and Beato caused the Ex-Im bank guaranteed loan to default, causing the United States to incur approximately a $1,951,643 loss in indemnifying a Lender.

24.　　　　　**GIRAL**, Isabel Sanchez, Guillermo Sanchez, Moreno, Amad, and Beato kept a portion of the fraudulently obtained proceeds for their personal benefit.

Date: **2/26/16**

GUSTAVO J. GIRAL
Defendant

Date: **2/26/16**

DANIEL ECARIUS, ESQ.
Attorney for the Defendant

Date: **2/26/16**

WILLIAM H. BOWNE
Trial Attorney
Florida Bar # A5501472
PATRICK M. DONLEY
Senior Ligation Counsel
Florida Bar # A5501108
Fraud Section, Criminal Division
United States Department of Justice